## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.                                CRIMINAL ACTION NO. 2:23-cr-00168

CAMRI CALRISSIAN WHITE,

               Defendant.

### MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Defendant Camri White's Motion to Suppress* (Document 69) and the *Response of the United States to Defendant's Motion to Suppress* (Document 78)[1], as well as all attached exhibits.    For the reasons stated herein, the Court finds the motion should be denied.

### FACTS AND BACKGROUND[2]

The Defendant, Camri Calrissian White, was first indicted on October 24, 2023.    On January 23, 2024, Mr. White was charged by Superseding Indictment with Carjacking in violation of 18 U.S.C. § 2119(1), Using, Carrying and Discharging a Firearm in Relation to Carjacking in violation of 18 U.S.C. § 924(c)(1)(A), Robbery in violation of 18 U.S.C. § 1951(a), Using,

---

[1] The Court notes that the United States failed to timely respond to the Defendant's pretrial motion as prescribed by *Local Rule of Criminal Procedure* 12.1.   Construing the United States' filing of a response as a motion for leave to file after the deadline, and noting the brevity of the delay, the Court accepts the response as filed.

[2] The facts are drawn from the documentary evidence submitted by the parties, as well as video evidence submitted by the parties pursuant to the Court's Order dated June 3, 2024 (Document 79) requesting all videos relied upon in the search warrant affidavit at issue to ensure full review.   Because the material facts are not in dispute, the Court finds that the facts and legal contentions are adequately presented in the parties' written submissions and further hearing on the motion would not aid the decisional process.

Carrying and Discharging a Firearm in Relation to Robbery in violation of 18 U.S.C. § 924(c)(1)(A), and Being a Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

The charges arise from two incidents that occurred in July 2023.   On July 7, 2023, officers from the South Charleston Police Department ("SCPD") responded to a kidnapping complaint. The victim advised officers that she was leaving work at approximately 2:00 a.m. when a male approached her vehicle, produced a pistol, and ordered her to exit the vehicle.   The victim described the pistol as black in color with an extended magazine.   The male suspect demanded her keys, phone, and wallet and forced her into the passenger seat.   The victim indicated that the suspect drove away while holding the pistol and requested directions to Cross Lanes, West Virginia.   He advised the victim that he had 30 rounds in the firearm and threatened to kill her if she took any action.   The victim described the male as bi-racial with short hair, thin and patchy facial hair, dark eyes, and thin lips.   She further described him as standing 5'10" or 5'11" and weighing about 140 or 150 pounds.   When the car was stopped at an intersection in South Charleston, the victim produced a pocketknife and stabbed the suspect several times before attempting to gain control of the firearm.   During the struggle, the firearm discharged.   The suspect exited the vehicle with the pistol in hand and fled the scene.   Officers canvassing the area spoke with an employee at a Speedway gas station who advised them that a male had entered the store, purchased a Gatorade, and asked for directions to north Charleston.   The male appeared to be limping and had blood on his pants.   Surveillance footage taken from the Speedway confirmed the description given by the carjacking victim and the Speedway employee.   SCPD sent images taken from the surveillance video to the South Central Regional Jail in Kanawha County.   The

male in the video was identified by the jail as the Defendant, Camri White, and an official provided Mr. White's booking information, description, and address of 4932 Washington Street in Cross Lanes to SCPD.

At 5:16 a.m. on July 11, 2023, officers with the Kanawha County Sheriff's Office (KCSO) responded to a reported robbery at The Little General Store located at 932 Cross Lanes Drive in Cross Lanes, West Virginia.   Employees advised that a masked male had entered the store through the front door, fired one round from a handgun into the ceiling, and held the employees at gunpoint while they retrieved money from both registers and a locked safe under the front counter.   As he left, the male told them that if they called the police within the next 15 minutes he would return and kill them.   The suspect then left the store on foot.   One employee described the suspect as a light-skinned black male wearing a black hoodie, black facemask, and dark colored jeans.   The firearm was described as a black handgun with a large extended magazine.   Another employee recalled the incident similarly but could only recall that the suspect was wearing a "silky" jacket. Surveillance video from the store largely matched the employees' description and further showed the suspect wearing dark gloves, black boots, and a black and grey coat or shirt with the word "JORDAN" emblazoned across the back and a grey "Air Jordan" logo on the front breast.   The video captured the suspect fleeing the store on foot at 5:15 a.m.

Officers canvassing the area obtained additional surveillance video footage which appeared to document the suspect's route to and from the Little General Store.   Footage taken from Cross Lanes Elementary School, located at 5525 Big Tyler Road,[3] showed the suspect traveling away from the Little General Store just before 5:16 a.m.   Surveillance video from Burdette Realty

---

3  The Little General Store is located at the intersection of Washington Street West and Big Tyler Road.

Improvement at 5148 Washington Street West depicted an individual wearing similar clothing and carrying a light-colored backpack walking along a fence behind the business and in the direction of the Little General Store at approximately 4:43 a.m.   Although the video is dark, the suspect appears to either continue past the business with the backpack or stash it out of view behind shrubbery.   No one else appears on the video until approximately 5:17 a.m., when an individual reappears from behind the shrubbery carrying the light-colored backpack and runs underneath the surveillance camera in the opposite direction.   The individual appears to be wearing dark clothing and a long-sleeve shirt or hooded jacket with "76" on the front of it.   Video from the Cross Lanes Mini Storage at 5032 Washington Street West showed the suspect walking away from the scene around 5:30 a.m.[4]   In that video, the suspect can be seen hiding the backpack in the weeds on two occasions as vehicles drive past him then backtracking to retrieve it.   Footage from Decota Consulting, located at 4984 Washington Street West, showed the suspect walking in the direction of the Little General around 4:26 a.m., and walking in the opposite direction at approximately 5:35 a.m.   In both instances, he was wearing dark clothing and carrying the light-colored backpack. Security video footage obtained from a residence at 4940 Washington Street West shows the suspect crossing the residence's driveway and yard around 5:39 a.m.   He ducks behind the homeowner's vehicle as a car approaches along the main road, then continues across the yard to a hole in the fence and exits to the road.   The suspect walks down the road away from the residence and can be seen crossing back into another yard before disappearing from view.   Video collected

---

4 The Court notes that the video is timestamped at approximately 4:14 a.m., but neither party disputes that the video shows the suspect passing at 5:30 a.m.  Although not relied upon in the affidavit or otherwise disputed, the Court further notes that footage from the Cross Lanes Mini Storage timestamped prior to the robbery shows the suspect walking in the direction of the Little General Store minutes before he appears on the Decota Consulting footage.

from the My Space Mini Storage at 4920 Washington Street West does not show the suspect either before or after the robbery.

While investigating the robbery, Detective Boner of the KCSO received a phone call from members of SCPD advising him of the July 7 carjacking.   They informed Det. Boner that the carjacking suspect matched the physical description of the robbery suspect, and that the carjacker had also used a handgun with an extended magazine.   They identified their suspect as Mr. White and provided Det. Boner with Mr. White's information and address at 4932 Washington Street West.   On July 12, 2023, Det. Boner and Sergeant J.S. Cochran traveled to Mr. White's address to conduct surveillance on possible suspects.   While in the area, Det. Boner observed a male who appeared to be Mr. White exit the building with a light-colored backpack and leave in a white Ford Edge.   The vehicle later returned, and the occupants reentered the apartment building.   After the vehicle returned to the residence, a disturbance occurred in a neighboring apartment and law enforcement was called.   Prior to law enforcement's arrival, Det. Boner and Sgt. Cochran observed unknown individuals leaving the area in the white Ford.   Officers responding to the disturbance spoke with Mr. White's grandmother, who advised that her grandson may have observed the disturbance but that he had just left with his girlfriend.   She provided officers with Mr. White's cell phone number.   The only vehicle observed leaving the scene around that time was the white Ford.   At some point during the investigation, Det. Boner also reviewed Mr. White's criminal history and learned that he pled guilty in Kanawha County Circuit Court to robbery involving a firearm in December 2017.

On July 13, 2023, Det. Boner requested a search warrant for Mr. White's residence, vehicles, and any/all curtilage of the residence where evidence related to the robbery might be

found.  Det. Boner provided an affidavit in support of the search warrant application (Document 69-1) in which he described the suspect appearing on the videos from the robbery and surrounding businesses, details from witness interviews, and the investigative measures taken by law enforcement following the robbery, including his phone call with SCPD and surveillance of Mr. White's residence.  Based on his review of the videos, Det. Boner stated that he observed the suspect travel on foot toward the Little General Store and "appear[] to hide a light-colored backpack" in the vicinity.  (Boner Aff. at 3.)  He further stated that the suspect returned to the area of the backpack following the robbery, "change[d] from the 'Jordan' coat/shirt to a coat/shirt that ha[d] '76' on the front of it," and fled carrying the light-colored backpack.  (*Id.*)  Det. Boner also described the videos from other businesses in the area which showed the suspect approaching and departing the scene with the backpack.  Regarding the footage taken from the residence at 4940 Washington Street West, Det. Boner stated that the suspect "continue[d] towards 4932 Washington Street West" and "can be seen entering the property" before he "appears to continue into the apartments."  (*Id.* at 4.)  The magistrate judge issued the search warrant on July 13, 2023.

On July 17, 2023, a KCSO SWAT team executed the search and arrest warrant for Mr. White at 4932 Washington Street.  Mr. White's grandmother, two individuals, and a child exited the residence at the officers' instructions.  A KCSO deputy watching the rear of the residence observed an individual throw a black handgun out of the apartment's rear window toward a creek.  Mr. White subsequently exited the apartment and was arrested without incident.  After SWAT cleared the residence, officers secured the area around the firearm.  The firearm was identified as a Smith & Wesson, model M&P 2.0, 9mm pistol with an extended magazine.  Officers searching the residence found a dark hoodie with a "76" printed across the front, as well as a white backpack.

6

They also located medical paperwork for Mr. White showing he received treatment at the CAMC Cross Lanes Urgent Care on July 8, 2023, for a laceration on his arm and leg.  Mr. White's grandmother further advised officers that Mr. White had access to an unlocked apartment next door, which Mrs. White watched for the property owner.  After obtaining audio-recorded permission to search the empty apartment for evidence related to the robbery, officers observed a black "Jordan" jacket and a pair of black "New Balance" pants on the apartment's kitchen countertop and recovered the same.

Mr. White contends all evidence seized pursuant to the search warrant should be suppressed because Det. Boner's affidavit submitted in support of the warrant application contained material facts that were erroneous and misleading, and that without those facts the affidavit is insufficient to establish probable cause.

## STANDARD OF REVIEW

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law.  *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005).  On a motion to suppress, the burden of proof is on the party who seeks to suppress the evidence.  *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981).  However, once the defendant establishes a proper basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence.  *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## DISCUSSION

Mr. White contends the search warrant for his residence was defective because the affidavit submitted by Det. Boner to obtain the warrant contained erroneous factual statements about the

video footage obtained from Burdette Realty Improvement and from the residence at 4940 Washington Street West.   Therefore, he argues that there was no probable cause to believe that evidence of the Little General Store robbery would be found in his residence.   He also seeks a *Franks* hearing to test the veracity of the challenged statements.   The United States maintains that the Affidavit provides a substantial basis for the magistrate judge's probable cause determination and that the facts therein were neither erroneous nor misleading.   It notes Det. Boner's use of qualifying language to distinguish between his descriptions of what each video actually depicts and his inferences therefrom using "simple reasoning and common sense."   (*See* Resp. of the U.S. to Def.'s Mot. to Supp. at 11) (Document 78.)   Notwithstanding the challenged statements, the United States asserts that the remainder of the affidavit is sufficient to support the magistrate judge's probable cause determination and that the Defendant is not entitled to a *Franks* hearing.

The Fourth Amendment "governs the admissibility of evidence obtained by state officers but ultimately used in a federal prosecution."   *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994).   It commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."   U.S. Const. amend. IV.   That clause is generally understood to require that warrants: "(1) be issued by a neutral and detached magistrate; (2) contain a particular description of the place to be searched and the persons or things to be seized; and (3) be based upon probable cause supported by oath or affirmation."   *United States v. Henry*, 931 F.Supp. 452, 454 (S.D.W.Va.1996) (citing *Clyburn,* 24 F.3d at 617).   Here, the Defendant contends only that Det. Boner's affidavit does not support the magistrate's probable cause determination.

8

The Fourth Circuit has recognized that "the concept of probable cause is not subject to a precise definition." *United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011) (citing *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir.2010)). However, the Supreme Court has explained that probable cause "exist[s] where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Accordingly, "[a]n assessment of the presence of probable cause must be based on the totality of the relevant circumstances, rather than on the technical or rigid demands of a formulaic legal test." *Allen*, 631 F.3d at 172 (citing *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983); *United States v. Blackwood,* 913 F.2d 139, 142 (4th Cir. 1990)). In making a probable cause assessment, the task of the issuing officer "is simply to make a practical, common sense decision whether given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. "[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam).

A.    *Video from Burdette Realty Improvement*

Regarding the video footage purportedly depicting the suspect approaching and fleeing the Little General, the Defendant first argues that Det. Boner erroneously stated in his affidavit that "[t]he suspect had a backpack staged in the area and changed clothes" and that "[t]he suspect appears to hide a light-colored backpack near the rear portion of Papa John's Pizza (5154 Washington Street West)." (Affidavit at 2.) He further contends the video footage does not

9

support Det. Boner's statement that "[t]he suspect returns to the area of the backpack at approximately 5:15 am., then changes from the 'Jordan' coat/shirt to a coat/shirt that has '76' on the front of it."   (Affidavit at 3.)   He asserts that the relevant surveillance footage from Burdette Realty shows "[a]t best, a figure with a backpack cuts through the property on or near" the business, and that the person "is not wearing the clothing that the [robbery] perpetrator is shown to be wearing."   (Def.'s Mot. to Suppress at 3.)   He maintains that the video evidence is dark and blurry "such that identification is not at all possible" and that the video "categorically does not show someone changing clothes . . . [n]or is it possible to see a new garment with '76' on it." (Def.'s Mot. to Suppress at 3.)

Upon review of the relevant video evidence, the Court finds that Det. Boner's statement describing the suspect as appearing to hide a backpack uses sufficiently qualifying language so as not to mislead a magistrate as to what the video actually depicts.   In addition, the Court finds that the remaining statements, which do not contain similar language and are not definitively supported by video evidence, are unnecessary for the probable cause determination because Det. Boner's affidavit nevertheless makes an "ample showing of probable cause" for issuance of the warrant. *See United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011).   Specifically, Det. Boner describes videos from several other locations which depict an individual wearing dark clothing and carrying a light-colored backpack.   He provides the address of each location from which video was obtained and relevant timestamps, allowing the magistrate to reasonably infer that the individual described followed the same or similar route to and from the area surrounding the Little General Store.   Crucially, Det. Boner does not describe any other individual passing through the area or carrying a light-colored backpack during the robbery.   He then describes footage from Cross

10

Lanes Elementary depicting the robbery suspect fleeing the Little General Store in the direction of the Burdette Realty without a backpack and describes an individual carrying the backpack fleeing behind the Burdette Realty in the same direction almost immediately thereafter.   He also states that officers located United States currency in the area where the backpack was purportedly staged. This information alone—without reference to the staging of the backpack or the change of clothing—is sufficient to establish probable cause that evidence related to the robbery would probably be found with the individual carrying the light-colored backpack.

B.    *Video from 4940 Washington Street West*

The Defendant likewise challenges Det. Boner's statement that the video taken from 4940 Washington Street West shows "[t]he suspect continue[] towards 4932 Washington Street West, where the suspect can be seen entering the property. The suspect appears to continue to the apartments."   (Affidavit at 4.)   While he concedes that the statement is not "conclusively erroneous" because it contains sufficient qualifying language, he nevertheless maintains that the statement "does not support a finding that the defendant is depicted [in the video] as returning home."   (Def.'s Supp. Mem. at 1) (Document 74.)

The remainder of the affidavit provides sufficient information that, taken together, makes a substantial showing of probable cause that evidence of the robbery would be found in or around the Defendant's residence.   In addition to describing the suspect as "appearing" to continue to the apartments located down the road from 4940 Washington Street West, Det. Boner further indicates that video evidence collected just beyond that area, from the My Space Mini Storage at 4920 Washington Street West, did not depict the suspect at any time.   The magistrate could reasonably determine based on this information that the suspect remained in the area between 4940 and 4920

11

Washington Street West.   Moreover, Det. Boner did not identify the Defendant or his residence from the video footage alone, but from information that he received from SCPD during the investigation and that he corroborated through independent surveillance of the area.

Accordingly, the Court finds that the affidavit supports the magistrate's probable cause determination and that the resulting warrant is not defective.   Because the Court concludes that Det. Boner's qualified statements in the affidavit are accurate, and that any unqualified or inaccurate statements are not necessary for the probable cause finding, the Defendant is not entitled to a *Franks* hearing.   *See United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011) ("To be entitled to a *Franks* hearing … the accused must make a substantial preliminary showing that false statements were either knowingly or recklessly included in an affidavit supporting a search warrant *and* that, without those false statements, the affidavit cannot support a probable cause finding.") (emphasis in original) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant Camri White's Motion to Suppress* (Document 69) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:        June 17, 2024

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

12