IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                            CRIMINAL ACTION NO. 2:23-cr-00168

CAMRI CALRISSIAN WHITE,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant Camri White's Motions in Limini to Exclude Prior Felony* (Document 70), the *Response of the United States to Defendant's Motion in Limine to Exclude Prior Felony* (Document 77), the *Defendant Camri White's Motion for Severance* (Document 71), and the *Response of The United States to Defendant's Motion for Severance* (Document 76). For the reasons stated herein, the Court finds that the motion in limine should be granted, and the motion to sever should be denied.

**FACTS AND BACKGROUND**[1]

The Defendant, Camri Calrissian White, was first indicted on October 24, 2023. On January 23, 2024, Mr. White was charged by Superseding Indictment with Carjacking in violation of 18 U.S.C. § 2119(1), Using, Carrying and Discharging a Firearm in Relation to Carjacking in violation of 18 U.S.C. § 924(c)(1)(A), Robbery in violation of 18 U.S.C. § 1951(a), Using,

---

[1] The facts are drawn from the documentary evidence submitted by the parties, as well as video evidence submitted by the parties pursuant to the Court's Order dated June 3, 2024 (Document 79).

Carrying and Discharging a Firearm in Relation to Robbery in violation of 18 U.S.C. § 924(c)(1)(A), and Being a Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

The charges arise from two incidents that occurred in July 2023. On July 7, 2023, officers from the South Charleston Police Department ("SCPD") responded to a kidnapping complaint. The victim advised officers that she was leaving work at approximately 2:00 a.m. when a male approached her vehicle, produced a pistol, and ordered her to exit the vehicle. The victim described the pistol as black in color with an extended magazine. The male suspect demanded her keys, phone, and wallet, and forced her into the passenger seat. The victim indicated that the suspect drove away while holding the pistol and requested directions to Cross Lanes, West Virginia. He advised the victim that he had 30 rounds in the firearm and threatened to kill her if she took any action. The victim described the male as bi-racial with short hair, thin and patchy facial hair, dark eyes, and thin lips. She further described him as standing 5'10" or 5'11" and weighing about 140 or 150 pounds. When the car was stopped at an intersection in South Charleston, the victim produced a pocketknife and stabbed the suspect several times before attempting to gain control of the firearm. During the struggle, the firearm discharged. The suspect exited the vehicle with the pistol in hand and fled the scene. Officers canvasing the area spoke with an employee at a Speedway gas station who advised them that a male had entered the store, purchased a Gatorade, and asked for directions to north Charleston. The male appeared to be limping and had blood on his pants. Surveillance footage taken from the Speedway confirmed the description given by the carjacking victim and the Speedway employee. SCPD sent images taken from the surveillance video to the South Central Regional Jail in Kanawha County. The

male in the video was identified by the jail as the Defendant, Camri White, and an official provided Mr. White's booking information, description, and address of 4932 Washington Street in Cross Lanes to SCPD.

At 5:16 a.m. on July 11, 2023, officers with the Kanawha County Sheriff's Office (KCSO) responded to a reported robbery at The Little General Store located at 932 Cross Lanes Drive in Cross Lanes, West Virginia. Employees advised that a masked male had entered the store through the front door, fired one round from a handgun into the ceiling, and held the employees at gunpoint while they retrieved money from both registers and a locked safe under the front counter. As he left, the male told them that if they called the police within the next 15 minutes he would return and kill them. The suspect left the store on foot. One employee described the suspect as a light-skinned black male wearing a black hoodie, black facemask, and dark colored jeans. The firearm was described as a black handgun with a large extended magazine. Another employee recalled the incident similarly but could only recall that the suspect was wearing a "silky" jacket. Surveillance video from the store largely matched the employees' description and further showed the suspect wearing dark gloves, black boots, and a black and grey coat or shirt with the word "JORDAN" emblazoned across the back and a grey "Air Jordan" logo on the front breast. The video captured the suspect fleeing the store on foot at 5:15 a.m.

Officers canvassing the area obtained additional surveillance video footage which appeared to document the suspect's route to and from the Little General Store. Footage taken from Cross Lanes Elementary School, located at 5525 Big Tyler Road,[2] showed the suspect traveling away from the Little General Store just before 5:16 a.m. Surveillance video from Burdette Realty

---

2 The Little General Store is located at the intersection of Washington Street West and Big Tyler Road.

Improvement at 5148 Washington Street West depicted an individual wearing similar clothing and carrying a light-colored backpack walking along a fence behind the business and in the direction of the Little General Store at approximately 4:43 a.m. Although the video is dark, the suspect appears to either continue past the business with the backpack or stash it out of view behind shrubbery. No one else appears on the video until approximately 5:17 a.m., when an individual reappears from behind the shrubbery carrying the light-colored backpack and runs underneath the surveillance camera in the opposite direction. The individual appears to be wearing dark clothing and a long-sleeve shirt or hooded jacket with "76" on the front of it. Video from the Cross Lanes Mini Storage at 5032 Washington Street West showed the suspect walking away from the scene around 5:30 a.m.[3] In that video, the suspect can be seen hiding the backpack in the weeds on two occasions as vehicles drive past him then backtracking to retrieve it. Footage from Decota Consulting, located at 4984 Washington Street West, showed the suspect walking in the direction of the Little General around 4:26 a.m., and walking in the opposite direction at approximately 5:35 a.m. In both instances, he was wearing dark clothing and carrying the light-colored backpack. Security video footage obtained from a residence at 4940 Washington Street West shows the suspect crossing the driveway and yard of the residence around 5:39 a.m. He ducks behind the homeowner's vehicle as a car approaches along the main road, then continues across the yard to a hole in the fence and exits to the road. The suspect walks down the road away from the residence and can be seen crossing back into another yard before disappearing from view. Video collected

---

3 The Court notes that the video is timestamped at approximately 4:14 a.m., but neither party disputes that the video shows the suspect passing at 5:30 a.m. Although not relied upon in the affidavit or otherwise disputed, the Court further notes that footage from the Cross Lanes Mini Storage timestamped prior to the robbery shows the suspect walking in the direction of the Little General Store minutes before he appears on the Decota Consulting footage.

from the My Space Mini Storage at 4920 Washington Street West does not show the suspect either before or after the robbery.

While investigating the robbery, Detective Boner of the KCSO received a phone call from members of SCPD advising him of the July 7 carjacking. They informed Det. Boner that the carjacking suspect matched the physical description of the robbery suspect, and that the carjacker had also used a handgun with an extended magazine. They identified their suspect as Mr. White and provided Det. Boner with Mr. White's information and address at 4932 Washington Street West. On July 12, 2023, Det. Boner and Sergeant J.S. Cochran traveled to Mr. White's address to conduct surveillance on possible suspects. While in the area, Det. Boner observed a male who appeared to be Mr. White exit the building with a light-colored backpack and leave in a white Ford Edge. The vehicle later returned, and the occupants reentered the apartment building. After the vehicle returned to the residence, a disturbance occurred in a neighboring apartment and law enforcement was called. Prior to law enforcement's arrival, Det. Boner and Sgt. Cochran observed unknown individuals leaving the area in the white Ford. Officers responding to the disturbance spoke with Mr. White's grandmother, who advised that her grandson may have observed the disturbance but that he had just left with his girlfriend. She provided officers with Mr. White's cell phone number. The only vehicle observed leaving the scene around that time was the white Ford. At some point during the investigation, Det. Boner also reviewed Mr. White's criminal history and learned that he pled guilty in Kanawha County Circuit Court to robbery involving a firearm in December 2017.

On July 13, 2023, Det. Boner requested a search warrant for Mr. White's residence, vehicles, and any/all curtilage of the residence where evidence related to the robbery might be

found. Det. Boner provided an affidavit in support of the search warrant application (Document 69-1) in which he described the suspect appearing on the videos from the robbery and surrounding businesses, details from witness interviews, and the investigative measures taken by law enforcement following the robbery, including his phone call with SCPD and surveillance of Mr. White's residence. Based on his review of the videos, Det. Boner stated that he observed the suspect travel on foot toward the Little General Store and "appear[] to hide a light-colored backpack" in the vicinity. (Boner Aff. at 3.) He further stated that the suspect returned to the area of the backpack following the robbery, "change[d] from the 'Jordan' coat/shirt to a coat/shirt that ha[d] '76' on the front of it," and fled carrying the light-colored backpack. (*Id.*) Det. Boner also described the videos from other businesses in the area which showed the suspect approaching and departing the scene with the backpack. Regarding the footage taken from the residence at 4940 Washington Street West, Det. Boner stated that the suspect "continue[d] towards 4932 Washington Street West" and "can be seen entering the property" before he "appears to continue into the apartments." (*Id.* at 4.) The magistrate judge issued the search warrant on July 13, 2023.

On July 17, 2023, a KCSO SWAT team executed the search and arrest warrant for Mr. White at 4932 Washington Street. Mr. White's grandmother, two individuals, and a child exited the residence at the officers' instructions. A KCSO deputy watching the rear of the residence observed an individual throw a black handgun out of the apartment's rear window toward a creek. Mr. White subsequently exited the apartment and was arrested without incident. After SWAT cleared the residence, officers secured the area around the firearm. The firearm was identified as a Smith & Wesson, model M&P 2.0, 9mm pistol with an extended magazine. Officers searching the residence found a dark hoodie with a "76" printed across the front, as well as a white backpack.

6

They also located medical paperwork for Mr. White showing he received treatment at the CAMC Cross Lanes Urgent Care on July 8, 2023, for a laceration on his arm and leg. Mr. White's grandmother further advised officers that Mr. White had access to an unlocked apartment next door, which Mrs. White watched for the property owner. After obtaining audio-recorded permission to search the empty apartment for evidence related to the robbery, officers observed a black "Jordan" jacket and a pair of black "New Balance" pants on the apartment's kitchen countertop and recovered the same.

## MOTION IN LIMINE

The Defendant moves pursuant to Federal Rules of Evidence 609(a)(1), 404(b), and 403 to preclude the United States from introducing, for any purpose at trial, evidence referring to the details of his 2017 state felony conviction for First Degree Robbery with a Firearm.

Rule 404(b) recognizes the potential probative value of evidence about prior crimes, wrongs, or acts. While such evidence is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," the Rule provides that it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)–(2). However, such evidence must still comport with the requirements of Rule 403, and thus "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Accordingly, the Fourth Circuit has developed a four-part test to determine when evidence of prior bad acts is admissible under Rules 404(b) and 403. Such evidence, which

may include prior convictions, may only be admitted where it is (1) relevant to an issue other than character; (2) "necessary in the sense that it is probative of an essential claim or an element of the offense"; (3) reliable; and (4) where the evidence's probative value is not "substantially outweighed" by unfair prejudice. *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997); *United States v. Hall*, 858 F.3d 254, 266 (4th Cir. 2017), *as amended* (June 21, 2017); *United States v. Brizuela*, 962 F.3d 784, 798 (4th Cir. 2020).

Rule 609 sets out an additional, though limited, set of circumstances in which evidence of prior convictions can be admitted at trial. Under this rule, a witness may be impeached with evidence of prior convictions that (1) are "punishable by death or by imprisonment for more than one year" or (2) required proving the defendant committed a dishonest act. Fed. R. Evid. 609(a). Where the witness is a defendant, evidence of a crime punishable by death or imprisonment for more than one year is admissible only "if the probative value of the evidence outweighs its prejudicial effect to that defendant." *Id.* 609(a)(1)(B).

The Defendant argues that the relevance, necessity, and Rule 403 balancing factors for determining admissibility under Rule 404(b) weigh against admitting his 2017 felony conviction. He further contends it is not admissible under Rule 609(a) because its probative value does not outweigh its prejudicial effect. The United States responds that evidence of the conviction is admissible under Rule 404(b) to prove the Defendant knew he was prohibited from possessing firearms, as charged in Count Five. It appears to acknowledge that the prior conviction would not be admissible for purposes of impeachment under Rule 609 but maintains that the evidence would be admissible for a purpose other than impeachment, such as to challenge specific testimony by the Defendant regarding his knowledge of his prohibited status.

The Court finds that evidence of the nature of the Defendant's prior conviction should be excluded.  While the prior conviction is admissible for a permitted purpose under Rule 404(b), its probative value is substantially outweighed by its prejudicial effect.  Evidence of the prior conviction is generally relevant and necessary because Count Five requires the United States to prove that the Defendant had a prior felony conviction and that he was aware of his prohibited status for purposes of possessing firearms.  However, evidence of the *nature* of the prior conviction—robbery with a firearm—does not pass the Rule 403 balancing test because it is so similar to the remaining counts in the Superseding Indictment, and thus highly likely to prejudice the Defendant such that a limiting instruction would be ineffective.  *See United States v. Sanders*, 964 F.2d 295, 297–98 (4th Cir. 1992).  Because the probative value of the nature of the 2017 conviction is minimal and its prejudicial effect is great, evidence of the nature of the 2017 conviction is not admissible under Rule 403.

The Court's finding does not prevent the United States from proving a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).  Count Five charges the Defendant with "knowingly possess[ing] a firearm" with the knowledge at the time that "he had been convicted of a crime punishable by a term of imprisonment exceeding one year."  (Superseding Indictment at 5) (Document 41.)  To establish the elements of this offense, the United States is only required to show that the Defendant had a prior felony conviction which prohibited him from possessing firearms, not the precise nature of the prior conviction.  The United States can prove the former without introducing the latter, including by way of stipulation or redacted court documents.

The parties do not appear to dispute that the 2017 felony conviction is not admissible under Rule 609(a) because its probative value is not outweighed by the danger of unfair prejudice to the

Defendant. The Defendant's state conviction for First Degree Robbery with a Firearm is nearly identical in nature to the offenses charged in Counts Three and Four of Hobbs Act robbery with a firearm, and the Fourth Circuit has noted that "[a]admission of evidence of a similar offense does little to impeach the credibility of a testifying defendant while undoubtedly prejudicing him." *United States v. Beam*, 664 F.2d 414, 418 (4th Cir. 1981). Because juries can "hardly avoid" inferring that a prior conviction makes it more likely that a defendant committed a similar charged offense, "the generally accepted view … is that evidence of similar offenses for impeachment purposes under Rule 609 should be admitted sparingly if at all." *United States v. Beam*, 664 F.2d 414, 418–19 (4th Cir. 1981)).[4] Accordingly, the Court finds that the Defendant's motion in limine to exclude evidence of the nature of his prior felony conviction at trial should be granted.

## MOTION TO SEVER

The Defendant moves to sever Counts One and Two from Counts Three, Four and Five of the Superseding Indictment on the basis that these Counts were improperly joined under *Federal Rule of Criminal Procedure* 8 because they represent "two distinct transactions or occurrences which are completely unrelated." (Def.'s Mot. for Severance at 1) (Document 71.) Regardless of whether joinder is proper, he further contends Counts One and Two, Counts Three and Four, and Count Five must be severed from one another under Rule 14 because the introduction of his prior conviction for First Degree Robbery with a Firearm will be "overwhelmingly prejudicial"

---

4 Of course, evidence of the nature of the prior conviction may be admissible to the extent that it is introduced to contradict specific testimony presented by the Defendant at trial. *United States v. Leavis*, 853 F.2d 215, 220 (4th Cir. 1988) (internal citations omitted) (evidence of defendant's prior felony conviction for possession of marijuana admissible in narcotics conspiracy prosecution to rebut his direct testimony implying he had no prior contact with drugs or drug dealers). In such a situation, the Court maintains discretion to further analyze admissibility under Rules 403 and 404(b).

10

due to the similarity of the nature of that offense to the conduct charged in Counts One through Four.

*Federal Rule of Criminal Procedure* 13 permits "two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information."  Rule 8(a) permits joinder of offenses if the charges (1) are of the same or similar character; (2) are based on the same act or transaction; or (3) constitute parts of a common scheme or plan.  However, "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses . . . the court may order . . . separate trials of counts . . . ."  Fed. R. Crim. P. 14.  Decisions regarding severance are left to the sound discretion of the district courts.  *See United States v. Rhodes*, 32 F.3d 867, 872 (4th Cir. 1994).  In deciding whether certain counts should be severed from the other counts in the indictment, the Court must balance the potential for prejudice to the Defendant resulting from joinder against the need to conserve judicial resources and to administer justice efficiently.  *See United States v. Silva*, 745 F.2d 840, 844 (4th Cir. 1984).

  A. *Joinder*

The Defendant concedes that Counts One and Two "may be grouped together as acts that charge crimes involved in an alleged carjacking incident," and that Counts Three, Four, and Five "may be grouped as involving a robbery." (Def.'s Mot. for Severance at 2–3.)  However, he argues that joinder of these groups is improper because the carjacking and robbery counts are "wholly distinct crimes" that, as charged, do not allege sufficient facts to support the conclusion that they involved the same acts or transaction or were otherwise connected by a common scheme or plan. (Def.'s Mot. for Severance at 5.)  The United States contends the counts are logically related due

to the similarities in the crimes charged and the overlap in the investigations of, and evidence related to, each offense.

The Fourth Circuit has interpreted the reference in Rule 8 to connected transactions "flexibly, requiring that the joined offenses have a 'logical relationship' to one another." *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005) (citing *United States v. Hirschfeld*, 964 F.2d 318, 323 (4th Cir.1992)). "Such a relationship exists when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal enterprise." *Id.* (internal citations omitted). Rule 8(a) permits "very broad joinder," *United States v. Mackins*, 315 F.3d 399, 412 (internal citation omitted), "because of the efficiency in trying the defendant on related counts in the same trial." *Cardwell*, 433 F.3d at 385; *see also United States v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008) (emphasizing "the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources"). "Thus, joinder is 'the rule rather than the exception.'" *United States v. Hawkins*, 776 F.3d 200, 206 (4th Cir. 2015) (quoting *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980)).

The Court finds that the charged offenses are properly joined because they are factually and logically related to one another such that they constitute connected transactions. The carjacking and robbery offenses were committed four days apart by a suspect described as a light-skinned black male who used a distinctive handgun with an extended magazine. Counts Two and Four of the Superseding Indictment specifically charge that the same handgun was used in the commission of each offense. In addition, the investigations of each incident overlapped significantly. Detective Boner only came to suspect the Defendant in relation to the robbery after learning the details of how the South Charleston Police Department identified him as a suspect in

the carjacking. (*See generally* Rep. of Investigation; Boner Aff.) This suspicion led Det. Boner to conduct additional surveillance of the Defendant and subsequently apply for the search and arrest warrant. Moreover, officers executing the search warrant seized a firearm matching the evidence collected at the robbery and the description of the handgun used in the carjacking. They likewise seized medical records during the search that showed the Defendant was treated on the day after the carjacking for injuries consistent with those inflicted on the carjacking suspect. Accordingly, the Court finds that the counts were properly joined under Rule 8(a).

B.   *Severance*

In the alternative, the Defendant contends Counts One and Two, Counts Three and Four, and Count Five must be severed from each other. He argues that evidence of the prior conviction for First Degree Robbery with a Firearm is a necessary element of the felon in possession charge in Count Five, and that introduction of the prior conviction would be highly prejudicial as to the armed robbery and armed carjacking counts. Although the Defendant notes that he anticipates stipulating to his knowledge of his prohibited status for purposes of Count Five, he maintains that the "highly prejudicial" nature of such stipulation presents a "very real danger" that he might be convicted due to the nature of his criminal history rather than the relevant evidence. (Def.'s Mot. for Severance at 6–7.) To the extent the Defendant seeks to sever Counts One and Two from Three and Four, the United States argues that he has not shown a prejudicial effect from those counts being tried together. As to Count Five, the United States disputes that a stipulation to the Defendant's prohibited status and his knowledge thereof would be highly prejudicial because such a stipulation would preclude reference to the nature of the conviction. (U.S. Resp. at 7.)

Rule 14 recognizes that "joinder under Rule 8(a) can be proper and, at the same time, severance can be required." *Cardwell*, 433 F.3d at 387. Thus, a court can sever a trial "[i]f the joinder of offenses … in an indictment … appears to prejudice a defendant." Fed. R. Crim. P. 14(a). However, it is not enough to show that severance offers "a better chance of acquittal." *Cardwell*, 433 F.3d at 387 (quoting *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995)). Rather, "a district court should grant a severance … *only* if there is a serious risk that a joint trial would … prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (emphasis added)). When evidence of joined crimes "would be mutually admissible for legitimate purposes in separate trials for each offense," the risk of prejudice is "greatly diminished." *United States v. Cole*, 857 F.2d 971, 974 (4th Cir. 1988) (quoting *United States v. Jamar*, 561 F.2d 1103, 1106 (4th Cir. 1977)).

The Defendant has not shown a serious risk that the jury could not make a reliable judgment if all counts are tried together. He offers no discernable argument as to severance of Counts One and Two from Counts Three and Four, and the Court has found that evidence of each overlaps. Moreover, the Court has found that evidence of the precise nature of the Defendant's prior conviction is inadmissible, and there remain means of mitigating the potential prejudice of the United States' introduction of evidence to prove Count Five, such as a limiting instruction or a stipulation, that comport with that evidentiary ruling. Accordingly, the Court finds that the Defendant's motion for severance should be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant Camri White's Motions in Limini to Exclude Prior Felony* (Document 70) be **GRANTED** (with the potential exception outlined in Footnote 4) and that *Defendant Camri White's Motion for Severance* (Document 71) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:    June 17, 2024

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA